UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

LIVING VEHICLE, INC.,

        Plaintiff,

v.                                  CAUSE NO. 3:21-CV-149 DRL-MGG

ALUMINUM TRAILER COMPANY,

        Defendant.

OPINION AND ORDER

        Living Vehicle, a company that designs high-end travel trailers, contracted with Aluminum Trailer Company (ATC) to manufacture units under a 2018 Master Services Agreement (MSA) and three statements of work (classified A, B, and C). Living Vehicle says the trailers that ATC built were lemons. Twelve claims remain.

        Today's motion concerns six claims—contract (count 1), negligent misrepresentation (count 2), implied and express warranties (counts 3-5), and indemnity (count 6). ATC argues that the companies created a liquidated damage fund that solely compensated these claims. This fund was exhausted at the time of suit, so ATC says Living Vehicle cannot establish the damages necessary to sustain these claims.

        The MSA required the trailers to be produced according to the statements of work. Each statement of work obligated Living Vehicle to make deposits to purchase the trailers. For trailers manufactured under the first production run, Living Vehicle deposited $250,000 plus individual deposits for trailers. For the next run, the company deposited $100,000 plus individual deposits. For the last, the company made only individual deposits for trailers. ATC built thirty trailers in total.

        The deposits under each statement of work were applied to Living Vehicle's purchases. ATC says these funds exclusively established the recoverable liquidated damages. No balance remains today. ATC thus requests summary judgment. Living Vehicle counters that its six claims elude just liquidated damages and that enforcement of this remedy would be unconscionable and contrary to public policy.

STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to find in her favor. *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020). The court must construe all facts in the light most favorable to the non-moving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491-92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003); *see also Joll v. Valparaiso Cmty. Sch.*, 953 F.3d 923, 924-25 (7th Cir. 2020).

In performing its review, the court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Nor is the court "obliged to research and construct legal arguments for parties." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge*, 24 F.3d at 920. The court must grant summary judgment when no such genuine factual issue—a triable issue—exists under the law. *Luster v. Ill. Dept. of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011).

DISCUSSION

As a federal court sitting in diversity, the court honors a choice-of-law clause unless it would contravene public policy. *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 357 (7th Cir. 2015). The MSA says Indiana law applies. The parties cite Indiana law. The court sees no reason to depart. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014); *Ruiz v. Blentech Corp.*, 89 F.3d 320, 323 (7th Cir. 1996).

A. *Scope of Liquidated Damage Provisions.*

The parties advance different interpretations of the liquidated damage provisions. A contract's interpretation is generally a question of law, *Song v. Iatarola*, 76 N.E.3d 926, 933 (Ind. Ct. App. 2017),

2

controlled by the parties' intent as expressed by clear contractual language, *City of Jeffersonville v. Env't Mgmt. Corp.*, 954 N.E.2d 1000, 1008 (Ind. Ct. App. 2011). "[W]hen the terms of a contract are drafted in clear and unambiguous language, [the court] will apply the plain and ordinary meaning of that language and enforce the contract according to those terms." *Haegert v. Univ. of Evansville*, 977 N.E.2d 924, 937 (Ind. 2012). "If a contract is ambiguous, the court may consider extrinsic evidence, and the construction of the contract becomes a matter for the trier of fact." *Song*, 76 N.E.3d at 933 (citation omitted).

The court starts with a preliminary issue: whether statement of work C has a liquidated damage provision. Living Vehicle argues there is none. ATC says there is. Statements of work A and B contain an express liquidated damage provision [ECF 1-2, SOW A § 2(a)(iv), SOW B § 2(a)(iii)]. In lieu, statement of work C says the next tranche of trailers will be produced by ATC per the terms of statement of work A, supplanting the very section (entitled "The Manufacturing Line") where the liquidated damage provision otherwise appeared in statement of work A [SOW C § 2(a)]. Nothing carves out the liquidated damage provision in statement of work A from this plain directive for the last manufacturing run.[1]

Living Vehicle argues that statement of work C could not have intended a liquidated damage remedy because ATC never required an advance deposit for the trailers in this last tranche (akin to statements of work A and B). All this perhaps shows is that the funding differed, not that a liquidated damage remedy was omitted. Statement of work C still required initial deposits of $46,500 per trailer [SOW C § 1(b)(iii)]. A difference in funding doesn't negate its clear language. In terms of this liquidated damage remedy, statement of work C was governed by the terms of statement of work A.

---

[1] This section in statement of work C refers to a "second" tranche of ten units when this statement of work otherwise refers to this being the "third" tranche [*compare* SOW C title and §§ 1(a)(ii), 1(a)(iii), 1(b), 1(b)(iii) *with* SOW C § 2(a)]. No one has argued, as a reason to avoid liquidated damages, that this provision's incorporation of the terms in statement of work A was intended to apply to the second tranche (otherwise governed by statement of work B), nor would that position make any sense. The second tranche consisted of eight units, not ten. The parties all treat this provision as directed toward the third tranche; and, for reasons obvious from the text of statement of work C and the other statements of work, the word "second" here was a mere scrivener's error (or mutual mistake) worthy of reformation. *See Carlson v. Sweeney, Dabagia, Donoghue, Thorne, Janes & Pagos*, 895 N.E.2d 1191, 1199 (Ind. 2008); *Peterson v. First State Bank*, 737 N.E.2d 1226, 1229 (Ind. Ct. App. 2000); *Essex Group v. Nill*, 543 N.E.2d 393, 396 (Ind. Ct. App. 1989).

The court thus turns to the heart of the matter: when the liquidated damage provisions apply. They identically state that, "[s]hould ATC be in breach of this Agreement in any way including the prompt delivery of all of the Production Living Vehicles, building the manufacturing line, etc., LV shall be entitled to the full recovery of the [initial deposit amount] or any balance remaining from deposits . . . whichever is less, as liquidated damages for said breach . . ." [*e.g.* SOW A § 2(a)(iv)].

Living Vehicle wants badly to argue that this clause is ambiguous, even pressing this point at oral argument, but the company cannot point to a word or phrase that proves ambiguous. It only views the provision as a whole ambiguous because of this litigation's differing interpretations, but a "contract term is not ambiguous merely because the parties disagree." *Roy A. Miller & Sons, Inc. v. Indus. Hardwoods Corp.*, 775 N.E.2d 1168, 1173 (Ind. Ct. App. 2002). "An ambiguity exists only [when] reasonable people could come to different conclusions about the contract's meaning." *Id.* (quotations omitted).

To begin, the liquidated damage provisions apply to a "breach of this Agreement in any way" [*e.g.* SOW A § 2(a)(iv)]. Rather than debate the point, both parties argue that "this Agreement" means the specific statement of work at issue [Tr. 19, 26-27, 33], and the court agrees with this interpretation.

A single master agreement (such as this MSA) may create independent contractual duties. *See, e.g., Heritage Dev. of Ind., Inc. v. Opportunity Options, Inc.*, 773 N.E.2d 881, 891 (Ind. Ct. App. 2002); *Stoneburner v. Fletcher*, 408 N.E.2d 545, 549 (Ind. Ct. App. 1980). This isn't uncommon in developing production runs when a master agreement will govern the overall arrangement between the parties and individual statements of work will govern the precise tranches. A master agreement often will direct this; after all, whether a contract is divisible is controlled by what the parties intended as disclosed in the contract's terms, including "whether it could be completed in part only." *Heritage*, 773 N.E.2d at 891.

The MSA does this very thing. The MSA governs the overall contractual relationship. It then requires ATC to produce certain tranches of units per individual statements of work [MSA §§ 5, 5(a)-(b), 5(d)]. The overarching MSA recognizes that the parties could agree to different designs, specifications, standards, and other terms for a particular production run; and, indeed the parties agreed, as an example,

4

to separate funding for the liquidated damage clauses over these three separate runs in their specific statements of work.

This same intent to treat the statements of work divisibly in respects appears in the MSA's plain language about damages. The MSA says if a party breaches a "specific" statement of work, the company "shall be liable for damages as defined in that [statement of work]" [MSA § 9(f)].[2] This language expressly directs the parties to the individual statements of work to consider what damages prove recoverable when one is breached. The court considers the contract as a whole and adopts an interpretation that harmonizes the agreement's various provisions. *See Barrington Mgmt. Co. v. Paul E. Draper Fam. Ltd. P'ship*, 695 N.E.2d 135, 140 (Ind. Ct. App. 1998). Doing so underscores the view that "this Agreement" in the liquidated damage provisions means the particular statement of work—just as the MSA directs.

The court also avoids interpreting terms in a way that renders them meaningless, *see id.*, and the surrounding language in the liquidated damage provisions echoes this interpretation of "this Agreement" as referring to the precise statement of work. For instance, the clauses reference the "units agreed to in this Agreement" [*e.g.* SOW A § 2(a)(iv)], which supports treating the particular statements of work—at least regarding damages—as divisible. After all, the trailers within each tranche are only specified in each respective statement of work, not otherwise in the contract.

Other introductory language from each statement of work supports this same interpretation, but these points suffice to conclude that a "breach of this Agreement," for purposes of liquidated damages, plainly means the precise statement of work at issue. There is no ambiguity here; nor are there technical words, local phrases, or terms of art that require extrinsic guidance. *See Ecorp, Inc. v. Rooksby*, 746 N.E.2d 128, 131 (Ind. Ct. App. 2001).

---

[2] This provision appears at the end of several clauses dealing otherwise with the agreement's termination, but it is introduced by language ("in addition thereto") that denotes a pivot to this other subject of what damages may be recovered for breach of a particular statement of work.

This now-settled interpretation largely directs the resolution of the remaining arguments. For instance, counts 2 through 6 never allege a breach of the statements of work to trigger the liquidated damage provisions. These claims instead concern duties imposed either by law or the express warranty—duties distinct from those imposed by any contractual obligation within the statements of work.

To find otherwise, ATC would have the court rewrite the language of the liquidated damage provisions to be all-encompassing. ATC argues that the provisions apply to counts 2 through 6 because these claims arise generally from the manufacture of trailers under the statements of work or rest on the foundation of Living Vehicle claiming the trailers were defective. ATC contends that the clause—"in any way"—makes the scope of these provisions limitless as to what claims fall within their purview.

The liquidated damage provisions say otherwise. They plainly apply only to a breach, and only then to a breach of a statement of work. The court cannot unmoor "in any way" from "breach" or a "statement of work" (*i.e.* "this Agreement"). The law disallows the invitation to rewrite these provisions to say they apply to breaches of obligations that originate in something entirely outside a statement of work. *See B&R Oil Co., Inc. v. Stoler*, 77 N.E.3d 823, 829 (Ind. Ct. App. 2017).

To put a finer point on this, count 2 alleges negligent misrepresentations, not because of a disclosure obligation within the statements of work, but because of the duty imposed by law.[3] *See Passmore v. Multi Mgmt. Servs.*, 810 N.E.2d 1022, 1025 (Ind. 2004); *Eby v. York-Division, Borg-Warner*, 455 N.E.2d 623, 628-29 (Ind. Ct. App. 1983). This claim isn't about a breach of any one statement of work.

The statements of work never address implied warranties (merchantability or fitness), so their alleged violation in counts 3 and 4 likewise could not be viewed a breach of the statements of work. These duties are implied by law, not imposed by contract—at least here that's true. *See* Ind. Code §§ 26-1-2-314, 315; *Heritage Operating, L.P. v. Mauck*, 37 N.E.3d 514, 520 n.2 (Ind. Ct. App. 2015). Merely saying these

---

[3] Living Vehicle's response mentions in passing the economic loss doctrine's inapplicability here. ATC never requested summary judgment on this basis, and its reply only includes a one-sentence comment. This point was undeveloped, so the court declines to address it. *See Gross v. Town of Cicero*, 619 F.3d 697, 704-05 (7th Cir. 2010); *Aliwoli v. Gilmore*, 127 F.3d 632, 635 (7th Cir. 1997).

implied warranties originate from the sales relationship existing between these two companies because of the MSA doesn't mean that these claims advance a breach of a statement of work.

Count 5 alleges a breach of the express warranty [MSA Ex. A], not the individual statements of work, so this claim also falls outside the plain language of the liquidated damage provisions. ATC conceded this same point in oral argument [Tr. 11]; and wisely so when, after all, the statements of work remain utterly silent about any express warranty. A breach of the express warranty may well be just that, or even a breach of the MSA, but not any obligation as established in any one statement of work governing these three production runs.

In fairness, whether a claim could be fashioned to allege simultaneously a violation of the express warranty and a statement of work, this particular claim on this record is pursued only under the express warranty, or under the theory that the express warranty's remedy failed its essential purpose. *See, e.g., Martin v. Thor Motor Coach Inc.*, __ F. Supp.3d __, 2022 U.S. Dist. LEXIS 82356, 18 (N.D. Ind. May 6, 2022). In short, this claim isn't one for breach of a statement of work to trigger liquidated damages as the company's sole remedy.[4]

In count 6, Living Vehicle asserts an indemnity claim for payments it made to consumers for repair work. The company says ATC's duty to indemnify results from incessant manufacturing defects that ATC failed to correct under its warranty. Though Living Vehicle at times couches this claim in

---

[4] In two sentences in the opening brief, and without citing any legal authority, ATC mentions that Living Vehicle should not be considered a purchaser or owner of the units for purposes of an express warranty claim because the warranty registration called the company a dealer. The court appreciates brevity in briefing, and also appreciates that ATC tried to run with this point more in reply and oral argument, but this won't preserve the point, particularly in that timing and without fair notice to Living Vehicle. *See Gross*, 619 F.3d at 704-05; *Aliwoli*, 127 F.3d at 635. For instance, the opening two sentences (and even later argument) leave unaddressed why the court should consider a registration when the express warranty extends to the "original purchaser" (not the original consumer purchaser), why this is ambiguous to give the court allowance to consider extrinsic evidence, or why Living Vehicle should be considered an ATC dealer given the MSA's express provision for a warranty [MSA § 4(b)(iv)] and any other number of provisions that call these units "living vehicle" trailers (not ATC trailers sold through a dealer). Nor has ATC explained, if the express warranty is viewed as ambiguous, why there isn't a triable issue on whether the parties intended Living Vehicle to be the warranty's benefactor based on the competitive facts of the warranty registration (offered by ATC) and deposition testimony that ATC's warranty was intended to address non-conforming defects after acceptance (offered by Living Vehicle). The court must deny summary judgment either way.

declaratory judgment terms, and gratuitously so given that it would seem unnecessary for the court to exercise such discretion here, *see, e.g.,* 28 U.S.C. § 2201(a); *Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983, 986 (7th Cir. 2010), it also aptly pursues its claim under common law indemnity, *see Elcona Homes Corp. v. McMillan Bloedell, Ltd.*, 475 N.E.2d 713, 715 (Ind. Ct. App. 1985); *Coca-Cola Bottling Co.-Goshen v. Vendo Co.*, 455 N.E.2d 370, 373 (Ind. Ct. App. 1983). Living Vehicle doesn't claim that ATC breached an indemnity obligation within a statement of work. As such, the claim isn't one for breach of a statement of work that liquidated damages would cover.

That leaves for discussion a more complicated contract claim (count 1). Living Vehicle asserts that ATC breached the MSA and also the individual statements of work. More specifically, Living Vehicle argues that ATC breached the statements of work because the trailers didn't conform with the company's "designs, specifications and standards" [*e.g.* SOW A § 3(c)]. Based on the court's interpretation of the liquidated damage provisions thus far, they would seem to apply to any breach of the statements of work, save for a lingering argument from Living Vehicle that bears on this claim alone.

Living Vehicle contends that the liquidated damage provisions relate solely to production and delivery breaches (pre-acceptance), not post-acceptance defects. The company says the provisions notably cite only issues related to production and delivery of the units [*e.g.* SOW A § 2(a)(iv) ("including the prompt delivery of all of the Production Living Vehicles, building the manufacturing line, etc.")].

But this position overlooks other language—"including" and "etc."—that demonstrates that these examples aren't meant to be exhaustive. *See, e.g., Richardson v. Nat'l City Bank of Evansville*, 141 F.3d 1228, 1232 (7th Cir. 1998) ("include" was not a term of limitation when interpreting an administrative regulation); *Burdick v. Romano*, 148 N.E.3d 335, 342 (Ind. Ct. App. 2020) ("includes" implies a non-exhaustive list); *see also* A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 132 (2012) ("the word *include* does not ordinarily introduce an exhaustive list"). The liquidated damage provisions plainly apply to a statement of work's breach "in any way"—further emphasizing that a breach to which these

8

clauses would apply wasn't intended to be limited merely to production and delivery breaches under any one statement of work.

That said, the court eschews other arguments that would invite the court to rewrite the liquidated damage clauses contra their plain meaning.[5] Living Vehicle says the structure of reducing the advance deposits across the statements of work also means they were intended as applying to only production and delivery issues, but this point merely boils down to an invitation for the court to rewrite the statements of work, which the court resolutely won't do. *See B&R Oil*, 77 N.E.3d at 829.

Thus to summarize, the liquidated damage provisions apply to breaches of the statements of work, irrespective of the type of breach, but not violations of obligations imposed by law, the MSA, or the express warranty outside a statement of work. A breach of contract claim requires damages, *see Morris v. Crain*, 71 N.E.3d 871, 880-81 (Ind. Ct. App. 2017), and Living Vehicle seems to concede that it cannot prove damages if the liquidated damage provisions apply to its contract claim.

Accordingly, the court must grant summary judgment for ATC to the extent Living Vehicle asserts a contract claim for breaches of the statements of work in count 1; but must deny summary judgment as to count 1 to the extent it concerns a contract claim for breach of an agreement other than the statements of work and deny the motion as to counts 2, 3, 4, 5, and 6 in their entirety because they concern violations of law or contract other than breaches of the statements of work.

B.   *Unconscionability and Public Policy.*

Living Vehicle argues that the liquidated damage provisions are unenforceable because they are unreasonable, grossly disproportionate to the actual damages, and contrary to public policy. This argument was made in response to ATC's position that the liquidated damage provisions covered all claims arising from the manufacturing of trailers, so it was painted with broad strokes. The plain language of the liquidated damage provisions lessens their effect and hence the power of these arguments.

---

[5] The section title—"The Manufacturing Line"—doesn't change the plain import of the language used in the liquidated damage clauses.

Indiana law has historically recognized and defended the freedom of parties to enter into contracts and presumes that contracts represent the freely bargained agreement of the parties. *Hartman v. BigInch Fabricators & Constr. Holding Co.*, 161 N.E.3d 1218, 1220 (Ind. 2021); *Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1129 (Ind. 1995) (citing *Weaver v. Am. Oil Co.*, 276 N.E.2d 144, 147 (Ind. 1971)). "[I]t is in the best interest of the public not to restrict unnecessarily persons' freedom of contract." *Fresh Cut, Inc.*, 650 N.E.2d at 1129 (citations omitted). "Despite this very strong presumption of enforceability, courts have refused to enforce private agreements that contravene statute, clearly tend to injure the public in some way, or are otherwise contrary to the declared public policy of Indiana." *Id.* at 1130.

Liquidated damage provisions are "generally enforceable" when "the nature of the agreement is such that damages for breach would be uncertain, difficult, or impossible to ascertain." *Weinreb v. Fannie Mae*, 993 N.E.2d 223, 232 (Ind. Ct. App. 2013) (citation omitted). When the "sum stipulated in the agreement is not greatly disproportionate to the loss likely to occur, the provision will be accepted as a liquidated damage[] clause and not as a penalty." *Harbours Condo. Ass'n v. Hudson*, 852 N.E.2d 985, 992 (Ind. Ct. App. 2006) (quotations and citation omitted). The court considers the facts, the parties' intentions, and the stipulated sum's reasonableness under the circumstances of the case to determine whether the stipulated sum constitutes liquidated damages or a penalty. *Nylen v. Park Doral Apartments*, 535 N.E.2d 178, 184 (Ind. Ct. App. 1989). The question whether a contractual provision stipulating damages is a valid liquidated damage clause or a penalty is a question of law for the court. *Am. Consulting, Inc. v. Hannum Wagle & Cline Eng'g, Inc.*, 136 N.E.3d 208, 211 (Ind. 2019).

Here, each statement of work required a deposit. For trailers manufactured under the first statement of work, Living Vehicle deposited $250,000 plus individual deposits for trailers. For the next, Living Vehicle deposited $100,000 plus individual deposits for trailers. For the last, the company made only individual deposits for trailers. Living Vehicle paid the balance upon acceptance and delivery of the unit. Before acceptance of a trailer, Living Vehicle had five business days to determine ATC's conformance with Living Vehicle's "designs, specifications and standards" and identify any problems or

10

reject the trailer [*e.g.* SOW A § 3(c)]. When problems arose or Living Vehicle rejected a trailer, ATC was obligated to make repairs. If breached, Living Vehicle was entitled to the remainder of the deposits.

ATC argues that the liquidated damage provisions are enforceable as they provided a reasonable remedy for breaches of the statements of work. The company contends that the liquidated damages in these circumstances—the remainder of the deposit—were not disproportionate to the loss likely to occur for breaches of the statements of work. The court agrees.

Living Vehicle and ATC had the freedom to enter the contract and statements of work of their choosing, and the law presumes the liquidated damage provisions represent their freely bargained agreement. *See Haegert*, 977 N.E.2d at 937. This is no less true when these agreements originated from sophisticated parties represented by sophisticated counsel. There is nothing unreasonable, disproportionate, or unconscionable to these liquidated damage provisions, or anything contrary to public policy, based on this record and given their plain meaning. Nor is Living Vehicle left remediless today.

## CONCLUSION

Construing all facts and reasonable inferences in favor of Living Vehicle, the court GRANTS IN PART ATC's motion for partial summary judgment as to breaches of the statements of work in count 1 and DENIES IN PART the motion in all other respects [ECF 46].

SO ORDERED.

July 1, 2022                                                                 *s/ Damon R. Leichty*
                                                                             Judge, United States District Court